UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORMAN ANTHONY DRYDEN,<br><br>Petitioner,<br><br>v.<br><br>CHARLES GREEN,<br><br>Respondent. | Civil Action No. 18-2686 (SDW)<br><br>OPINION |

**WIGENTON**, District Judge:

Presently before the Court is the *pro se* petition for a writ of habeas corpus of Petitioner, Norman Anthony Dryden, filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Following an order to answer, the Government filed a response to the Petition (ECF No. 4). Petitioner chose not to file a reply. For the following reasons, this Court will deny Petitioner's habeas petition without prejudice.

**I. BACKGROUND**

Petitioner, Norman Anthony Dryden, is a native and citizen of Jamaica who first entered this country in 2001. (Document 4 attached to ECF No. 4). Following Petitioner's release from Maryland state prison resulting from convictions in 2012 for aggravated assault and marijuana possession, Petitioner was issued a notice to appear charging him with being removable based on his convictions and was taken into immigration detention pursuant to 8 U.S.C. § 1226(c) on May 24, 2017. (*Id.* at 3-4). Petitioner has remained detained since that date.

Petitioner first appeared before an immigration judge for his initial hearing on June 22, 2017. (Document 2 attached to ECF No. 4 at 1). At that hearing, Petitioner requested additional time to acquire counsel, and his proceedings were postponed until July 12, 2017. (*Id.*). Petitioner

1

appeared again on July 12, but once again requested time to seek counsel, and his removal proceedings were once again postponed. (*Id.*). Petitioner thereafter appeared before an immigration judge on August 30, 2017, but his hearing was adjourned so Petitioner could prepare an asylum application. (*Id.* at 2). When Petitioner came before the immigration courts again in October 2017, however, he again requested additional time to prepare his application, and his matter was once again rescheduled. (*Id.*). Petitioner's November 2017 hearing was also adjourned at Petitioner's request, with Petitioner ultimately filing his applications for relief from removal on December 15, 2017. (*Id.*). When Petitioner appeared before the immigration court again on January 31, 2018, his matter was once again delayed for a merits hearing, which was thereafter held on March 20, 2018. (*Id.*). As of the date the answer was filed, the immigration judge had not yet entered a decision. It is unclear if Petitioner has since received an order of removal, final or otherwise.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his

claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

In his habeas petition, Petitioner challenges his continued immigration detention pursuant to 8 U.S.C. § 1226(c), which requires that certain classes of removable aliens be detained pending removal proceedings based on their having a qualifying prior criminal conviction. The Supreme Court first considered the propriety of prolonged detention pursuant to § 1226(c) in *Demore v. Kim*, 538 U.S. 510 (2003). Upon a review of the statute, the authority of Congress to detain aliens pending removal, and the usual time frame associated with detention under the statute, the Court determined in *Demore* that the statute was facially constitutional as "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. In reaching this conclusion, the Court noted that in most cases detention under the statute lasted only a month and a half and that even in cases where an appeal was taken to the Board of Immigration Appeals, detention pursuant to § 1226(c) lasted an average of four months, indicating that detention under the statute was often brief and had a defined beginning and end point in the form of the conclusion of removal proceedings. *Id.* at 529. Ultimately, as the Court found the statute constitutional, the *Demore* Court rejected Petitioner's challenge even though Petitioner had spent slightly longer than average in detention – a period of approximately six months. *Id.* at 530. Thus, after *Demore* it was clear that immigration detention under § 1226(c) was facially valid, and that detention for less than six months would not be sufficient to support an as applied challenge to detention under the statute.

In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), however, the Third Circuit concluded that detention under § 1226(c) would become constitutionally suspect if it continued for a prolonged period of time well beyond the six months discussed in *Demore*. In that case, the Third Circuit explained that while mandatory detention without an individualized hearing for a brief period, such as that discussed in *Demore,* was constitutionally sound, excessively prolonged detention would be unreasonable and "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233. Turning to the statute itself, the Third Circuit found that, in cases involving prolonged detention lasting several years, mandatory detention could become unreasonable and thus unconstitutional if that detention continued absent a hearing. The Court of Appeals, however, did "not believe that Congress intended to authorize prolonged, unreasonable detention without a bond hearing," and thus determined that § 1226(c) must be read to "contain[] an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length [and the statute] yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose" when this "implicit limitation" is exceeded. *Id.* at 235.

The Third Circuit thus avoided its constitutional concerns with prolonged detention under § 1226(c) by reading this limitation into the statutory text. *Id.* Based on this implicit limitation, the *Diop* panel held that § 1226(c) "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes." 656 F.3d at 231. The determination of whether a given period of detention is reasonable is a fact specific inquiry "requiring an assessment of all of the

4

circumstances of a given case" *Id.* at 234.  Reasonableness in this context is "a function of whether [continued detention without bond] is necessary to fulfill the purpose of the statute," specifically protecting the public and ensuring that the petitioner attends his removal proceedings.  *Id.*

The Third Circuit refined this approach to the statute in *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015).  In *Chavez-Alvarez*, the Third Circuit reiterated that § 1226(c) should be read to contain an implicit reasonableness limitation, and that detention beyond the point of reasonableness absent a bond hearing would be unconstitutional.  *Id.* at 475. While the Third Circuit had declined to adopt a bright line rule for determining reasonableness based solely on the passage of time in *Diop*, s*ee* 656 F.3d at 234; *see also Carter v. Aviles*, No. 13-3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014), the Third Circuit did provide guidance on that point in *Chavez-Alvarez*.  Specifically, the Third Circuit in *Chavez-Alvarez* held that, at least where the Government fails to show bad faith on the part of the petitioner, "beginning sometime after the six-month timeframe [upheld by the Supreme Court in *Demore v. Kim*, 538 U.S. 510, 532-33 (2003),]  and certainly by the time [the petitioner] had been detained for one year, the burdens to [the petitioner's] liberties [will outweigh] any justification for using presumptions to detain him without bond to further the goals of the statute."  783 F.3d at 478.  Thus, the Third Circuit held that the implicit time limitation the Third Circuit read into § 1226(c) would, in the ordinary case absent bad faith, be reached sometime prior to one year of detention.  *Id.*

For several years, the *Chavez-Alvarez* remained the applicable rule for determining whether detention comported with Due Process in this circuit.  The Supreme Court's February 2018 decision in *Jennings v. Rodriguez*, 538 U.S. ---, 138 S. Ct. 830 (2018), however, explicitly rejected the practice of reading implicit time limitations into unambiguous statutes such as § 1226(c).  As the Court explained in *Jennings*,

5

[Section] 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting – but not requiring – the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, "[e]xcept as provided in [§ 1226(c)]." Section 1226(c) states that the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c) then goes on to specify that the Attorney General "may release" one of those aliens "*only if* the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk. § 1226(c)(2) (emphasis added).

[Section] 1226(c) does not on its face limit the length of the detention it authorizes. In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue "pending a decision on whether the alien is to be removed from the United States." § 1226(a).

. . . the Court of Appeals held[] that § 1226(c) should be interpreted to include an implicit . . . time limit on the length of mandatory detention. . . . [T]hat interpretation falls far short of a plausible statutory construction.

In defense of th[is] statutory reading, respondents first argue that § 1226(c)'s "silence" as to the length of detention "cannot be construed to authorize prolonged mandatory detention, because Congress must use 'clearer terms' to authorize 'long-term detention.'" . . . But § 1226(c) is *not* "silent" as to the length of detention. It mandates detention "pending a decision on whether the alien is to be removed from the United States," § 1226(a), and it expressly prohibits release from detention except for narrow, witness-protection purposes. Even if courts were permitted to fashion . . . time limits out of statutory silence, they certainly many not transmute existing statutory language into its polar opposite. The constitutional-avoidance canon does not countenance such textual alchemy.

Indeed, we have held as much in connection with § 1226(c) itself. In *Demore v. Kim*, 537 U.S. [at 529,] we distinguished § 1226(c) from the statutory provision in *Zadvydas* by pointing out

6

> that detention under § 1226(c) has "a definite termination point": the conclusion of removal proceedings. As we made clear there, that "definite determination point" – and not some arbitrary time limit devised by the courts – marks the end of the Government's detention authority under § 1226(c).
>
> Respondents next contend that § 1226(c)'s limited authorization for release for witness-protection purposes does not imply that other forms of release are forbidden, but this argument defies the statutory text. By expressly stating that the covered aliens may be released "only if" certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions.
>
> . . . .
>
> We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings "only if" the alien is released for witness-protection purposes.

*Id.* at 846-47. Having determined that the statute contains no implicit time limitations, and having previously determined in *Demore* that § 1226(c) is facially constitutional, the Supreme Court observed that the only challenge to detention under § 1226(c) which remains viable after *Jennings* is an individual petitioner's challenge to the constitutionality of the statute as applied to him. *Id.* at 851-52. Because both *Diop* and *Chavez-Alvarez* based their holdings on the Court of Appeals' reading of an implicit reasonableness-based time limitation into § 1226(c), and because *Jennings* clearly rejected that approach, it is clear that *Jennings* has abrogated *Diop* and *Chavez-Alvarez*, and only an individualized as applied constitutional challenge to the statute remains for Petitioner and those in similar circumstances.[1]

---

[1] This Court is not the first in this Circuit to reach this conclusion. *See, e.g., Coello-Udiel v. Doll*, No. 17-1414, 2018 WL 2198720, at *3 (M.D. Pa. May 14, 2018).

Although the Third Circuit's ultimate rulings in *Diop* and *Chavez-Alvarez* have been abrogated by *Jennings*, and those two cases are no longer binding upon this Court, it does not follow that those two cases should be ignored. The constitutional reasoning that underlay the Third Circuit's invocation of the constitutional avoidance canon still provides some persuasive guidance to how this Court should address § 1226(c) claims. Specifically, the Court accepts that the "constitutionality of [detention pursuant to § 1226(c) without a bond hearing] is a function of the length of the detention [and t]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds." *Chavez-Alvarez*, 783 F. 3d at 474 (quoting *Diop*, 656 F.3d at 232, 234). This Court likewise is mindful that "any determination on reasonableness [must be] highly fact specific" and that "at a certain point – which may differ case by case[] – the burden to an alien's liberty outweighs" the Government's interest in detention without bond," *id.* at 474-75, and that detention which is so unreasonable as to amount to an arbitrary deprivation of liberty cannot comport with the requirements of the Due Process Clause. *Id.* at 474; *see also Demore*, 538 U.S. at 432 (Kennedy, J., concurring). Because, however, *Jennings* foreclosed the constitutional avoidance basis provided by the Third Circuit in its determination that detention will normally become suspect between six months and a year, and because *Jennings* leaves open only the question of whether § 1226(c) is unconstitutional as applied to the petitioner, it is insufficient that Petitioner's detention has merely become suspect by reaching this six month to a year threshold, in order for Petitioner to be entitled to release he must show that his ongoing detention is so unreasonable or arbitrary that it has actually violated his rights under the Due Process Clause. If Petitioner's detention has not become so unreasonable or arbitrary that continued application of the statute is unconstitutional

as applied to Petitioner, § 1226(c) authorizes his continued detention until a final order of removal is entered and Petitioner would not be entitled to relief. *Jennings*, 138 S. Ct. at 846-47.

In this matter, Petitioner has been held in immigration detention pursuant to § 1226(c) for just over a year. While that length of time may have been sufficient under the abrogated regime of *Chavez-Alvarez* to render his detention suspect, the facts of this case do not support a finding that § 1226(c) is unconstitutional as applied to Petitioner. In reaching this conclusion, the Court notes that the majority of the delay in Petitioner's immigration results is directly attributable to Petitioner's own delay in acquiring counsel and ultimately filing his petition for relief, and any remaining delay was not the result of any apparent inaction or unreasonable delay on the part of the Government. Given these self-inflicted delays, and the lack of any bad faith or unreasonable action on the part of the Government, it fully appears that Petitioner's detention still serves the purposes of § 1226(c) – specifically ensuring that Petitioner appears for his immigration proceedings – which as of the time of the last filing in this matter, the Government's answer, were nearing their end before the immigration judge. Indeed, from the time Petitioner ceased requesting continuances in his removal matter, his case proceeded to a merits hearing in the course of only a couple of months. Given the procedural history of Petitioner's removal proceedings, Petitioner's decisions to seek multiple continuances in that matter, and the relatively swift course of Petitioner's removal proceedings following Petitioner's filing of requests for relief from removal, this Court cannot conclude that Petitioner's ongoing detention has become so prolonged as to arbitrary or unconstitutionally unreasonable. Petitioner has therefore failed to demonstrate that § 1226(c) is unconstitutional as applied to him, and Petitioner's habeas petition must therefore be denied without prejudice at this time.

**III. CONCLUSION**

For the reasons expressed above, this Court denies Petitioner's habeas petition without prejudice. An appropriate order follows.

Dated: June 21, 2018

                                                ***s/ Susan D. Wigenton***
                                                Hon. Susan D. Wigenton,
                                                United States District Judge